## BELL v. PHILADELPHIA LIFE INS. CO.
### No. 3838.

Circuit Court of Appeals, Fourth Circuit.
June 10, 1935.

Charles G. Rose, of Fayetteville, N. C. (Malcolm McQueen and Rose & Lyon, all of Fayetteville, N. C., on the brief), for appellant.

W. H. Fisher, of Clinton, N. C., and Henry C. Strickland, of Angier, N. C. (Dupree & Strickland, of Angier, N. C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This suit was instituted in the superior court of Cumberland county, N. C., and was removed by defendant into the court below, where it was docketed on the equity docket. The bill of complaint alleged that the defendant had issued to plaintiff a policy of life insurance in the sum of $10,000, with provision for the payment of $100 per month with waiver of further premiums in case of total and permanent disability; that a note had been given for a balance on the premium due in the year 1932, which had been extended to May 28, 1933, the day upon which the premium payable in the year 1933 became due; that plaintiff became totally and permanently disabled prior to May 28, 1933, but did not give defendant notice of disability pursuant to the terms of the policy because of his mental condition resulting from the disability; and that defendant, without notice to plaintiff, wrongfully proceeded to convert the policy into one for extended insurance because of the failure on plaintiff's part to pay the premium extension note. It prayed that the policy be declared by the court to be in full force and effect, and that plaintiff recover on account of total and permanent disability the sum of $100 per month for the period of the disability, which at the time of the institution of the action amounted to $600. The answer denied that the plaintiff had become totally and permanently disabled and alleged that the policy had lapsed, except as to the extended insurance feature, on May 28, 1933, because of failure to pay the premium extension note.

The judge below impaneled a jury to try the issues involved in the case, but at the conclusion of the testimony directed them to find for the defendant, and entered a decree dismissing the suit. From this decree complainant has appealed. In this court defendant has moved to strike from the record the statement of the evidence signed by the judge below on the ground that the action was one at law, that the statement of evidence should be treated as a bill of exceptions, and that, not having been signed at the trial term or within an extension thereof, it was not properly a part of the record. Plaintiff has moved to remand the cause to the court below with direction to remand same to the state court, on the ground that it involves less than the jurisdictional amount of $3,000.

The motion to remand must be denied. The suit was instituted, not merely to recover the disability benefits alleged to be due under the policy, but also to have the policy declared in full force and effect upon an allegation that the defendant had wrongfully declared it lapsed for nonpayment of the premium extension note and had converted it into a policy of extended term insurance under the option features of the contract. It is well settled that equity will afford such relief in the case of wrongful cancellation or conversion of a policy of insurance. Burnet v. Wells, 289 U. S. 670, 680, 53 S. Ct. 761, 77 L. Ed. 1439; Michaelsen v. Security Mut. Life Ins. Co. (C. C.) 150 F. 224; American Trust Co. v. Life Ins. Co. of Va., 173 N. C. 558, 92 S. E. 706, 711; Meyer v. Knickerbocker Life Ins. Co., 73 N. Y. 516, 29 Am. Rep. 200; Day v. Ins. Co., 45 Conn. 480, 29 Am. Rep. 693; Metropolitan Life Ins. Co. v. McCormick, 19 Ind. App. 49, 49 N. E. 44, 46, 65 Am. St. Rep. 392; Cooley's Briefs on Insurance, vol. 5, p. 4692; 14 R. C. L. 1014; 32 C. J. 1264. And as such relief would directly determine the validity of a policy involving $10,000 life indemnity in addition to disability benefits, it is perfectly clear that it involves more than $3,000, exclusive of interest and costs.

It is true, as contended by plaintiff, that the jurisdiction of the court depends upon the amount actually in controversy in the suit and not upon any amount indirectly involved because of the probative effect of the judgment rendered therein (New England Mortgage Co. v. Gay, 145 U. S. 123, 12 S. Ct. 815, 36 L. Ed. 646); but here the policy itself is directly in controversy and its value determines the value in suit. See Pac. Mut. Life Ins. Co. v. Parker (C. C. A. 4th) 71 F.(2d) 872, 874; Ginsburg v. Pac. Mut. Life Ins. Co. (C. C. A. 2d) 69 F.(2d) 97, 98.

It is unnecessary to pass upon the motion to strike from the record the statement of the evidence, since we are of opinion that, even though the plaintiff be correct in his contention that the suit was in reality heard in equity and hence no bill of exceptions was necessary to enable us to review the testimony, nevertheless, the testimony as certified, when examined, shows that the decree appealed from was correct. The insurance policy in question was issued by

defendant on May 28, 1929. It insured the life of plaintiff in the sum of $10,000 and contained a clause agreeing to waive further payment of premiums and pay the insured a monthly income of $100 per month upon condition that "due written proof" should be furnished the company of the total and permanent disability of the insured before default in the payment of any premium and while the policy was in full force (but not as extended or paid-up insurance). It contained the following provisions:

"If any premium or regular instalment thereof is not paid before the expiration of the grace period, or if any premium obligation is not paid when due, then this policy is in default and shall be deemed to have lapsed as of the date when the defaulted premium or instalment was due, and thereafter shall have no value except as provided for under 'Options on Lapse,' subject, however, to any notice required under the laws of the State in which this policy is delivered."

"*Options on lapse—(a) Extended insurance*—If any premium remain unpaid at the end of the grace period, and if at least three full years' premiums have been paid, this policy, if no other option has been exercised, will be continued from the date of lapse, as non-participating paid-up term insurance (herein called extended insurance). The amount of such extended insurance shall be the face amount of this policy increased by the amount of any dividend additions and decreased by the amount of all existing indebtedness to the company on account of or secured by this policy. The term shall be such as the cash value at the date of lapse, applied as a net single premium, will purchase and shall include the grace period."

On May 28, 1932, the company accepted from the insured, as part payment of the premium then due, a premium extension note in the sum of $247.75, payable two months after date, which contained the following provision: "It is understood and agreed to by me that, if this note is not paid at its maturity, or at the expiration of any period to which it shall have been extended, no days of grace being allowed for the payment thereof, the said Insurance Contract No. 103311 shall lapse, and all further liability of said Philadelphia Life Insurance Company on account of said contract shall immediately cease and determine, subject to the privileges and provisions therein stated, and that the money which has been paid on account of the premium or premiums, for the balance of which this note is given, shall be forfeited to the company. No personal liability accrues under this note and in the event of non-payment the sole remedies of the company shall be as stated herein."

This note was extended from time to time, and on January 19, 1933, was extended to May 28, 1933; the company declining to extend it beyond that date. On April 27, 1933, notice was duly sent insured of the maturity of the note, and on the following day notice was sent him of the premium falling due on May 28th. He paid neither the note nor the premium on the date due, but on June 26, 1933, forwarded check in payment of both which the company declined to accept on the ground that, upon failure to pay the premium extension note when due, the policy became converted into one for paid-up term insurance under the option contained in the policy. The plaintiff does not controvert the position that the effect of failure to pay the premium extension note would ordinarily be that contended for by the company; but he contends that the ordinary rule does not apply here, because, he says, he was totally and permanently disabled within the meaning of the policy for several months before the premium extension note fell due, and that the amount due him for disability benefits would more than counterbalance the amount due on the note. He meets the requirement of notice as to total and permanent disability contained in the policy by the contention that he was mentally incapable of giving the notice required, relying upon the recent decisions of this court and the Supreme Court in Johnson v. Mutual Life Ins. Co., 70 F.(2d) 41; Id., 293 U. S. 335, 55 S. Ct. 154, 79 L. Ed. 398, and the decision of the Eighth Circuit Court of Appeals in Minnesota Mutual Life Ins. Co. v. Marshall, 29 F.(2d) 977, and a number of North Carolina decisions of which Rhyne v. Jefferson Standard Life Ins. Co., 196 N. C. 717, 147 S. E. 6, is typical.

█ A careful reading of the record, however, convinces us that the plaintiff does not bring his case within the scope of the decisions upon which he relies. While

there is some evidence that for two or three months prior to May 28, 1933, plaintiff was not in good health, there is no evidence to warrant a finding that he was totally and permanently disabled during this period, or that his mental condition was such that he was incapable of giving the notices required by the policy. On the contrary, it appears that he was at work in his grocery store every day up until Saturday, June 3, 1933, when he suffered some sort of seizure and fell while waiting on a customer in his store; that he regularly waited on customers and transacted other business around his store; and that on Monday, May 29th, he had himself examined by a physician with the view of taking out another insurance policy. The physician who examined him at that time found nothing wrong with his mental condition, except that he seemed to be nervous. The ratio decidendi of the cases upon which plaintiff relies is that the requirement of notice contained in the policy must be read with "an exception reasonably saving the rights of the insured from forfeiture when, due to no fault of his own, he is totally incapacitated from acting in the matter." The evidence in this case does not warrant the finding of any such incapacity on the part of plaintiff prior to June 3d; and, as the policy was forfeited for failure to pay the note on May 28th, unless plaintiff was so disabled that failure to give notice of disability prior to that time was excused, it is clear that the incapacity of June 3d cannot avail him.

For the reasons stated, the decree appealed from will be affirmed.

Affirmed.